175 So.2d 269 (1965)
247 La. 921
Succession of Louella RIDLEY, wife of Emory SMITH.
No. 47574.
Supreme Court of Louisiana.
May 3, 1965.
Rehearing Denied June 7, 1965.
*270 Maurice L. Burk, Maurice R. Woulfe, New Orleans, for opponent-applicant.
Adrian G. Duplantier, New Orleans, in pro. per.
SANDERS, Justice.
This is a succession proceeding. Louella Ridley died testate on March 19, 1960. Her succession was opened and the testamentary executor caused an inventory of the property to be made. Inventoried as the only asset of the succession and classified as separate property of the decedent was a house and lot located at 1835 Third Street in New Orleans. On May 6, 1963, the property was sold under court order at private sale for $2800.00.
On June 20, 1963, the Executor filed a "Petition presenting final account and for discharge of executor." The petition itemized the receipts, consisting of the proceeds of the private sale and rentals from the property prior to the sale. The Executor proposed to pay itemized law charges and deliver the balance of the funds to the legatees named in the will. The Executor prayed that the account be homologated and that the Executor be discharged.
On June 25, 1963, Emory Smith, alleging himself to be a surviving spouse in community, filed a pleading in the succession captioned "Opposition to Final Account." In this pleading he alleged in part:
"That the property described as lot "C", Square 261, Fourth District of New Orleans, bearing the municipal number 1835 Third Street, which property comprised the sole asset of this succession as reflected by the inventory filed in these proceedings, was not the separate property of the decedent, but in truth and in fact formed a part of the community of acquets and gains which existed between the decedent and your opponent; that said property was acquired on September 9, 1954, in the name of the decedent while she was married to and living as husband and wife with your opponent, and that the funds used to acquire this property were community funds." (Italics ours.)
He prayed to be recognized as surviving spouse in community entitled to as such to one-half the funds in the succession and that the charges be paid solely from the one-half interest of the decedent.
The husband filed three amended oppositions, concerned only with the rent account.
To the husband's opposition, the Executor filed exceptions of no cause of action, no *271 right of action, and non-joinder of indispensable parties.
The exceptions of no cause and no right of action were based upon the contention that the husband could not oppose the "final account" under Article 3336, LSA-C.C.P., since he was neither an heir, creditor, nor legatee.
The exception of non-joinder of indispensable parties was levelled at the failure of the opponent to join the legatees and the purchaser of the property, the Executor alleging that the title to the property would be affected by a judgment upon the opposition.
The district court overruled the exceptions of no cause and no right of action but sustained the exception of non-joinder of indispensable parties insofar as it related to the purchaser of the property. Thereafter, the opponent, by petition, joined the purchaser of the property, Mrs. Mary Modica Pierce. The purchaser filed an answer to the petition denying that the property was community property.
Upon the trial of the opposition, all parties stipulated that if the real estate were found to be community property, the claim of the opponent would be relegated to the proceeds of the sale in the hands of the Executor "conditioned upon the [opponent's] transferring to the said Mary Modica, divorced wife of Ed Pierce any interest that he might have in said property by notarial act." The district court then dismissed the purchaser from the litigation.
After trial on the merits, the district court held that the property was the separate property of the decedent, sustained the exception of no right of action, and dismissed the opposition. On motion of the opponent, the court granted a new trial for the limited purpose of hearing the testimony of an additional witness. After the new trial, the court reinstated the judgment dismissing the opposition.
The opponent-husband appealed. The Court of Appeal affirmed the judgment of the district court but upon a different ground. That court held that the exception of no right of action should have been maintained at the outset, since the opponent was asserting a real action by way of an opposition to the Executor's final account. It declined to consider the merits of the case. See La.App., 169 So.2d 414. Upon application of the opponent-husband, we granted certiorari 247 La. 260, 170 So.2d 512, to review the judgment of the Court of Appeal.
We do not agree with the judgment of the Court of Appeal sustaining the exception to the pleading. Article 5051 of the LSA-Code of Civil Procedure reminds the courts that "the rules of procedure implement the substantive law and are not an end in themselves." Harsh rules of pleading are not favored in this state. Each pleading must be reasonably construed so as to afford the litigant his day in court, arrive at the truth, and do substantial justice.[1] The law abhors a multiplicity of suits.[2]
The characterization of a pleading by the litigant is not controlling. Pleadings are taken for what they really are, and not for what their authors designate them.[3] A court should not eject a justiciable cause merely because it is dressed in the wrong coat.
*272 An analysis of the "Opposition" discloses that the gist of opponent's complaint is that the property has been inventoried in the succession as separate property of the decedent, when actually it was community property. In reality, the pleading is a traverse of the inventory by a surviving spouse in community.
Article 3135, LSA-C.C.P. provides:
"The proces verbal of a public inventory returned into court as provided in Article 3134 shall be accepted as prima facie proof of all matters shown therein, without homologation by the court.
"An interested person at any time may traverse the proces verbal of a public inventory by contradictory motion served upon the notary and the person at whose instance the inventory was made."
A motion to traverse the inventory is a proper procedural device for a surviving spouse to assert the community status of property when the succession inventory has classified it as the separate property of the decedent.[4] The surviving spouse is an "interested person" within the intendment of the codal article. The traverse may be filed "at any time" during the course of the succession, even after the property has been sold in the proceeding. Although immovable property is listed in the inventory, the motion to traverse the inventory is not a real action. Service of the motion is made only upon the Notary and the person at whose instance the inventory was made.
In the present case service was made upon the Executor, at whose instance the inventory was made. The pleading was not served upon the Notary. We observe, however, that the Notary was also an attorney of record for the Executor. Since the Executor filed responsive pleadings, proceeded to hearing, and filed no objection to the lack of service on the Notary, we conclude that the absence of service has been waived. See Article 928, LSA-C.C.P.
The Executor and Opponent have joined in requesting this Court to render judgment on the merits without remanding the case to the Court of Appeal for further consideration. Since they have assigned cogent reasons, we accede to their request.
Briefly stated, the essential facts relating to the status of the inventoried property are these: The decedent, Louella Ridley, and Emory Smith married in 1917. They were never divorced. On September 9, 1954, Louella Ridley purchased from her natural son, Ed Pierce, the property at 1835 Third Street in New Orleans by cash sale in authentic form executed by the parties before Adrian G. Duplantier, Notary Public. The Act of Sale recited a price of $4000.00, the cash payment of which was acknowledged. In the sale, Louella Ridley declared that she had been married but once, then to Emory Smith, from whom she had been living separate and apart "for over twenty years." She further declared that the purchase was made with her separate funds, under her separate administration, and for the benefit of her separate estate.
On the same date as the cash sale, September 9, 1954, Louella Ridley executed a mortgage on the property in favor of Charles L. Rivet in the sum of $4200.00, payable in monthly installments of $90.00, and bearing eight percent annum interest from maturity. On September 17, 1954, the decedent further encumbered the property in favor of Charles L. Rivet in the sum of $475.00 payable in monthly installments of $25.00 and bearing 8 percent per annum interest from date.
Mr. Duplantier, the Notary Public, testified that at the time of the sale, the property *273 was involved in a foreclosure proceeding against Ed Pierce. Louella Ridley advanced $450.00 of the purchase price from funds that she then held. She borrowed the balance of the purchase price from Mr. Duplantier and Mr. J. L. Rivet, giving the first mortgage to secure the loan and capitalized interest. The second mortgage of $475.00 represented legal fees and costs. Charles L. Rivet was listed as a nominal mortgagee. Mr. Duplantier, who was also the attorney for Louella Ridley, had no contact with Emory Smith during these transactions.
Both mortgages were liquidated in due course, through irregular monthly payments.
The law presumes that property purchased by the wife during marriage is community property. The status of the property is fixed at the time of the purchase. The presumption may be rebutted only by clear and convincing evidence.[5]
Article 2334, LSA-Civil Code provides in part:
"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court * * * and the property purchased with all funds thus derived, are her separate property."
The hearing in the district court resolved itself into the issue of whether the decedent was in fact living apart from her husband during the period in which she purchased the property. The court heard more than a dozen witnesses. The evidence disclosed that the decedent had regular income from domestic employment and other sources. The opponent-husband's income, on the other hand, was largely restricted to an "old age pension" of $50 to $55 per month after 1950. The eminent trial judge sustained the position of the Executor that the decedent was living separate and apart from her husband during the relevant period, so that the property became her separate property under the above codal article. The trial judge denounced the credibility of several witnesses in the strongest terms, though he did not identify all of them by name.
In Orlando v. Polito, 228 La. 846, 84 So.2d 433, we said:
"It is well settled that the trial judge's findings on question of fact, and particularly on questions involving the credibility of witnesses who testified before him, are entitled to great weight on appeal and will not be disturbed unless clearly erroneous. Williams v. Louisiana Ry. & Nav. Co., 121 La. 438, 46 So. 528; Barnes v. Le Blanc, 207 La. 989, 22 So.2d 404; Plunkett v. United Elec. Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437."
The record furnishes no good reason for us to disturb the findings of the trial court. Especially is this true since the credibility of the witnesses was a major factor in the court's resolution of the factual issues.
We hold, then, that the inventory correctly listed the property as the separate property of the decedent. Hence, the motion to traverse the inventory was properly dismissed.
For the reasons assigned, the judgment of the Court of Appeal is affirmed. All costs of court are assessed against the appellant-applicant.
HAMITER, J., concurs in the result.
HAWTHORNE, J., concurs in the decree.
NOTES
[1] Erath Sugar Company v. Broussard, 240 La. 949, 125 So.2d 776; Florida Molasses Co. v. Berger, 220 La. 31, 55 So.2d 771; West v. Ray, 210 La. 25, 26 So.2d 221.
[2] Succession of Tacon, 186 La. 418, 172 So. 513.
[3] Erath Sugar Company v. Broussard, 240 La. 949, 125 So.2d 776; Pfister v. St. Bernard Cypress Co., 155 La. 575, 99 So. 454; State ex rel. Matt v. Rightor, 37 La.Ann. 843; Mays v. Hartford Accident and Indemnity Company, La.App., 159 So.2d 388.
[4] See, e.g., Succession of Hollier, 247 La. 384, 171 So.2d 656 and Succession of Winsey, La.App., 170 So.2d 732. See also LSA-C.C.P. Form No. 825i.
[5] Article 2402, LSA-Civil Code; Monk v. Monk, 243 La. 429, 144 So.2d 384; Succession of LeJeune, 221 La. 437, 59 So.2d 446; Montgomery v. Bouanchaud, 179 La. 312, 154 So. 8.