LINDSAY, Judge.
Creditors of the decedent’s son sought to accept the decedent’s succession on the son’s behalf following his renunciation of his rights therein and the signing of a judgment of possession. The creditors appeal from a trial court judgment dismissing their suit to accept the succession and appoint an administrator. For the reasons set forth below, we affirm the judgment of the trial court.
FACTS
Charles Elliotte Andrews, Jr., died testate on July 10, 1988. He was survived by his wife, Ruth Ferney Andrews, and their two children, Charles E. Andrews, III, (referred to as “Mr. Andrews”) and Betty Andrews Osborn. Thereafter, on July 22, 1988, the children executed renunciations of their father’s succession.
Almost two years later, in April, 1990, the decedent’s widow filed a petition seeking probate of the decedent’s will and possession of the entire estate due to the renunciation of the succession by the other legatees, i.e., her children. By a judgment signed on April 26, 1990, administration of the succession was dispensed with and Mrs. Andrews was sent into sole possession of the estate. The petition for probate and the judgment of possession were both filed in the record the next day.
On July 25, 1990, a petition was filed by creditors of Charles E. Andrews, III, seeking authority to accept the succession on their debtor’s behalf and for appointment of an administrator under LSA-C.C. Art. 1071, 1072 and 2044. The creditors were Krielow Brothers Partnership, Carl J. Krie-low, William J. Krielow, and Chris B. Krie-low (collectively referred to as the “Krie-low Brothers”), and Pro-Ag, Inc. Named as defendants were Mr. Andrews and his mother.
The petition stated that Pro-Ag, Inc. had obtained a judgment dated September 7, 1988, against Mr. Andrews and a co-defendant in the amount of $30,000 plus interest, costs and attorney’s fees. The judgment was obtained in Suit No. 335,441 on the docket of the First Judicial District Court, entitled “Pro-Ag, Inc. v. Charles Andrews, Benny Cummings and Cajun Country Duck Club, Inc.”
Furthermore, the petition asserted that the Krielow Brothers were assignees of another judgment against Mr. Andrews. This judgment was rendered in a suit entitled “Jennings Federal Savings and Loan *196 Association v. Krielow Brothers Partnership, et al,” No. C-449-88 on the docket of the Thirty-first Judicial District Court in and for the Parish of Jefferson Davis. That judgment, which was signed on July 15, 1988, was in the amount of $22,085.71, plus interest, costs and attorney’s fees.
The creditors contended that no portion of either judgment had been paid. They sought an inventory of the decedent’s property and the appointment of Carl J. Krie-low as administrator of the succession.
On July 30, 1990, Mrs. Andrews filed an answer in which she denied knowledge of any judgment against her son. She asserted that under LSA-C.C.P. Art. 3136 an inventory was not required and that an administration was unnecessary as the succession had been completed. She further maintained that any judgment creditor was entitled only to the privilege on immov-ables, not movables. On August 17, 1990, Mr. Andrews filed an answer identical to the one filed by his mother.
On August 24, 1990, Mr. Andrews and his wife filed for Chapter 7 bankruptcy protection. On January 17, 1991, the creditors obtained an order modifying and lifting the automatic bankruptcy stay to allow them to prosecute the instant succession matter to judgment and to thereafter enforce such judgment against the succession property.
Following the order obtained in the bankruptcy proceedings, Barry Kuperman, the Andrews’ permanent trustee, filed a petition of intervention in the succession suit on March 11, 1991. As trustee, Mr. Kuper-man claimed the status of an unsatisfied lien creditor in this action filed by the creditors.
On June 24, 1991, a hearing on the creditors’ application for appointment of an administrator was held. It was stipulated that no payments had been made on the two judgments against Mr. Andrews. Counsel for Mr. Andrews’ creditors admitted that they were aware of his father’s death approximately four to six weeks before the succession was filed. The bankruptcy trustee testified that he had no reason to know of the decedent’s death prior to Mr. Andrews filing for bankruptcy on August 24, 1990. He also testified that Mr. Andrews had received a discharge from the bankruptcy court and that the bankruptcy case remained open only for the completion of the instant succession matter.
At the conclusion of the hearing, the trial court denied the creditors’ motion for appointment of an administrator. It further ordered that the creditors’ petition to accept the succession and the trustee’s petition for intervention be dismissed at their respective costs. The court specifically found that the creditors’ petition to accept the succession was untimely because it was filed after the signing of the judgment of possession (which necessarily recognized Mr. Andrews’ renunciation). Likewise, the application for appointment of an administrator was untimely because it was not made until after the closing of the succession. The court stated that, unless some fraud were alleged to cause the reopening of the succession, the succession would remain closed, and the creditors would have to seek relief against Mr. Andrews in some other proceeding. A judgment in conformity with this ruling was subsequently signed.
Suspensive appeals were taken by both the creditors and the trustee/intervenor.
LAW
The applicable Civil Code articles provide, in pertinent part, as follows:
Art. 1021. The creditors of the heir who refuses to accept or who renounces an inheritance to the prejudice of their rights, can be authorized by the judge to accept it, in the name of their debtor and in his stead, according to the forms prescribed on this subject in the following section.
Art. 1071. When the creditors wish to be authorized to accept a succession, which their debtor refuses to accept, or which he has renounced to their prejudice, they must present a petition to the judge of the place where the succession *197 is opened, to obtain the authorization necessary for that purpose, after the debtor or his representative has been duly cited, or a counsel appointed for him, if he is absent, by the judge.
Art. 1072. If, on this demand, it is proved to the judge that the debtor refuses to accept the succession, or has renounced it to the prejudice of his creditors, he is bound to authorize the creditors to accept it in his stead; and it. is the duty of the judge to cause immediately to be made an inventory of the effects of the succession, to appoint an administrator to manage them, sell them and pay the creditors, on his giving good and sufficient security for the fidelity of his administration, as in the case of acceptance with the benefit of inventory.
Also relevant is LSA-C.C.P. Art. 3393(A), which states, in pertinent part:
A. After a succession representative has been discharged, if other property of the succession is discovered or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be reopened_ [Emphasis ours.]
The determination of what constitutes proper cause to reopen a succession under LSA-C.C.P. Art. 3393 is within the discretion of the trial court and may be overturned only for an abuse of discretion. Succession of Yancovich, 289 So.2d 855 (La.App. 4th Cir.1974).
DISCUSSION
The creditors contend that the trial court had no discretion to refuse to reopen the succession where the creditors sought to accept the renounced succession under LSA-C.C. Art. 1071 and 1072. However, if such discretion is vested in the trial court, the creditors contend that the court abused that discretion in the instant case where the succession was basically opened and closed on the same day and their action was asserted within 90 days of the judgment of possession. They further argue that there was no statutory basis for the trial court’s refusal to reopen the succession.
There are few cases dealing with the Civil Code articles in question. We have summarized these cases as follows.
In Succession of Quartararo, 541 So.2d 243 (La.App. 4th Cir.1989), the decedent’s succession was under administration for more than three years before a judgment of possession was signed. Less than a month later, an heir’s creditor petitioned to accept the succession in his place and to be appointed administrator. The creditor obtained a default judgment. Appeal was taken by another creditor from a subsequent judgment on a rule to rank the creditors. While the appellate court found that the trial court judgment ranking the creditors was not premature, it remanded for a new ruling on the rule to rank. Apparently, the right of the creditors to reopen the succession and assert their claims was not questioned.
In Succession of Manuel, 551 So.2d 853 (La.App. 3d Cir.1989), writ denied, 556 So.2d 1263 (La.1990), an heir’s creditors filed petitions to reopen the succession so they could seek authorization to accept the succession 10 months after the signing of the judgment of possession. The trial court dismissed their petitions on exceptions of no right of action. On appeal, the court reversed, finding that the creditors not only had a right of action, but they also had a right to attack any renunciation of the succession by the heir and accept the succession on his behalf.
Implicit in both Quartararo and Manuel, supra, is the assumption that a creditor could seek to accept his debtor’s portion of a succession on his debtor’s behalf, even after a judgment of possession had been obtained. However, for reasons expressed hereafter, we conclude that the timeliness of the creditors’ action is not the determining factor in resolving the present case.
In Succession of Neuhauser, 561 So.2d 956 (La.App. 4th Cir.1990), affirmed, 579 So.2d 437 (La.1991), the creditor petitioned to reopen the succession almost a year after the signing of a judgment of possession in order to accept the debtor/heir’s *198 renounced share of the succession. After a full evidentiary hearing, the trial court denied the creditor’s petition, finding that the creditor had not shown good cause to reopen the succession. The appellate court affirmed, noting that the succession had been open for some 18 months prior to the signing of the judgment of possession without the creditor making any effort to check the public records for information as to its debtor’s financial status.
The Supreme Court granted writs and likewise affirmed. It held that before a creditor could have its debtor’s renunciation of an inheritance set aside by a revocatory action and accept in the heir’s place, the creditor must plead and prove that the debtor acted fraudulently and that the renunciation caused injury to the creditor. Although LSA-C.C. Art. 1021 does not specifically include the requirement of fraud, the Supreme Court found that the “history, settled interpretation and underlying policies” of the article demanded that result.[1]
Furthermore, the court ruled that LSA-C.C. Art. 1072 places the burden of proving fraud and resulting injury on the creditor before judicial approval will be granted to the creditor to accept the debtor’s inheritance. In order to prove injury or prejudice, the creditor must prove that the renunciation rendered the heir insolvent or augmented his preexisting insolvency. The Supreme Court held that, on the showing made, the trial court exercised sound discretion in concluding that under LSA-C.C.P. Art. 3393 proper cause had not been shown to reopen the succession.
Based upon the Supreme Court decision in Neuhauser, it is apparent, in the instant case, that the creditors and the trustee were required to allege and prove that Mr. Andrews fraudulently renounced his rights in his father’s succession and that this act rendered Mr. Andrews insolvent or augmented his antecedent insolvency. Only then could the creditors set aside his renunciation and obtain judicial approval to accept the decedent’s succession on Mr. Andrews’ behalf.[2]
Our examination of the creditors’ petition reveals no allegations of fraud. Nor was any evidence' of fraud presented at the hearing. Further, even though Mr. Andrews and his wife filed for bankruptcy protection in 1990, we have no evidence of his insolvency at the time he executed the renunciation in 1988.
Consequently, on the showing made, we find no abuse of discretion in the trial •court’s refusal to reopen the decedent’s succession.
CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the appellants.
AFFIRMED.
HIGHTOWER, J., concurs with written reasons.

. However, see Recent Developments, 66 Tul. L.Rev. 1101 (1992), which questioned this conclusion.

. At this point, we note the distinction between an oblique action under LSA-C.C. Art. 2044 and a revocatory action under LSA-C.C. Art. 2036. In the oblique action, the creditor exercises a right belonging to the debtor in the debtor’s name. In the revocatory action, the creditor acts in his own name to enforce his own rights. LSA-C.C.P. Art. 2036 provides a means by which the creditor may annul his debtor’s acts. See Recent Developments, supra note 32, at 1105. We construe the instant case as being in the nature of a revocatory action because of the necessity of annulling Mr. Andrews’ renunciation.